IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| v. | § | Case No. 7:18-cr-00855 |
| **JORGE ZAMORA-QUEZADA** | § § | |

### DEFENDANT'S POSITION REGARDING FORFEITURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW DEFENDANT, JORGE ZAMORA-QUEZADA to present his position prior to the forfeiture hearing set for December 9, 2024.

**I.  Background**

The superseding indictment in this case alleged that the government would seek forfeiture from Dr. Zamora-Quezada of (1) "all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses" upon conviction of Counts 1 through 9 (health care fraud conspiracy and specific acts of health care fraud) and (2) "all property, real or personal, involved in money laundering offenses or traceable to such property" upon conviction of Count 10 (conspiracy to commit money laundering).

The jury found Dr. Zamora-Quezada guilty of Counts 1 through 4, Counts 6 through 9, and Count 11 (conspiracy to obstruct justice). The jury found Dr. Zamora-Quezada not guilty of Count 5. The Court dismissed the money-laundering count (Count 10) at the close of evidence.

On February 26, 2020, the government filed an opposed motion for forfeiture. Docket #702. In the motion, the government argued that there was "pervasive fraud in the

Defendant's clinics" and thus argued that all the proceeds generated by his clinics "were the proceeds of health care fraud." Docket #702 at 5. In support of this, the government cited evidence that Dr. Zamora-Quezada, a rheumatologist, treated nearly 72.9 of his Medicare patients with rheumatoid arthritis. The government also cited multiple witnesses who testified at trial.

Since February 2020, Dr. Zamora-Quezada and the government have submitted multiple filings regarding loss amount. Since the government's position relied heavily on its analysis of claims data, Dr. Zamora-Quezada requested and analyzed additional claims data, and he submitted to the Court an analysis by Mariela Ruiz (Docket #811) that found that many of the patients whom the government had identified as fraudulently diagnosed by Dr. Zamora-Quezada with rheumatoid arthritis had been, according to data, diagnosed with rheumatoid arthritis by other providers.

## II.   This Court Should Impose A Money Judgment Consistent with its Finding on Loss

Under Federal Rule of Criminal Procedure 32.2, this Court "must determine what property is subject to forfeiture under the applicable statute." When the government seeks forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense." *Id*. When the government seeks a personal money judgment, "the court must determine the amount of money that the defendant will be ordered to pay." *Id*.

Here, the government has shown that Dr. Zamora-Quezada's clinics made money and that Dr. Zamora-Quezada acquired properties with the proceeds of his clinics. But the government has glossed over the crucial step, which is showing that he used money that was the proceeds *of a crime* to acquire such properties.

While respectfully disagreeing with the jury's verdict, Dr. Zamora accepts that the jury has convicted him of crimes involving at least seven specific patients, the ones who were the subjects of Counts 2 through 4 and Counts 6 through 9. But this falls far short of establishing that *everything* Dr. Zamora-Quezada did and billed was a crime, especially since the jury acquitted Dr. Zamora-Quezada of health care fraud involving the patient in Count 5, whom another rheumatologist also diagnosed with rheumatoid arthritis. In total, the payments associated with the Counts 2 through 4 and Counts 6 through 9 were approximately $15,000, far less than what the government seeks in terms of forfeiture.

As explained in a prior filing (Docket #751), the government's assumption that everything that Dr. Zamora-Quezada ever did was fraudulent was unwarranted and was not supported by the evidence. For example, many patients were diagnosed with rheumatoid arthritis *before* being seen by Dr. Zamora-Quezada, as shown by the forms that some alleged victims filled out upon first seeing Dr. Zamora-Quezada, as referenced in a prior filing. *See* Docket #751 at pages 12-13.[1]

The Court indicated in a May 20, 2021 hearing that it would not accept the government's argument that the fraudulent conduct at issue in this case was so "pervasive" that the Court would assume that every claim that Dr. Zamora-Quezada submitted to Medicare, Medicaid, Blue Cross, and TRICARE was fraudulent. Much briefing and discovery ensued, largely because the government continued to argue that almost every patient who

---

[1] The government has argued that such forms should be given no weight (Docket #815 at 5), but it has not presented any evidence that Dr. Zamora-Quezada or his staff filled out patients' personal history forms incorrectly. The government's theory at trial was that Dr. Zamora-Quezada falsely diagnosed patients and had his staff create some fake files in the course of an audit, not that his staff created false personal history forms.

was diagnosed with rheumatoid arthritis was fraudulently diagnosed, without ever doing a statistical sample and without ever producing any additional expert evidence to the Court.

Most recently, the government has misinterpreted Ms. Ruiz's report and findings, as indicated in its response to her report (Docket 815). Accordingly, at the forfeiture hearing, Dr. Zamora-Quezada intends to call Ms. Ruiz to explain her report, the limitations of her analysis, and her opinions on how losses can and should be calculated. He does not intend to present any documentary evidence apart from what has already been presented at trial or in the post-trial filings.

Ultimately, Dr. Zamora-Quezada's position remains that the government has not sufficiently established that all or nearly all of the proceeds of his clinics were the result of Counts 1 through 4 and Counts 5 through 9. Without such a finding, the Court should not find that the government has sufficiently traced proceeds of the offenses of conviction here to any of the properties listed in the superseding indictment, and the Court should not find that any of those properties "constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses." The Court should decline to enter a forfeiture judgment on any of the properties listed in the superseding indictment, and it should instead enter a money judgment based on the amount of loss that it finds based on the overall record.

Respectfully submitted,

**MARTINEZ/TIJERINA, PLLC**
1201 East Van Buren
Brownsville, Texas 78520
Tel:  956-550-4868
Fax:  956-621-0135

By: /s/ Benigno (Trey) Martinez
BENIGNO (TREY) MARTINEZ
State Bar No.  00797011
Federal ID No. 23945

E-mail: trey@mbmtlawfirm.com
TOMAS F. TIJERINA
State Bar No. 24070746
Federal ID No. 1062166
E-mail: ttijerina@mbmtlawfirm.com

AND

**LAW OFFICE OF STEPHEN CHAHN LEE, LLC**
209 S. LaSalle St, Suite 950
Chicago, IL, 60604
Tel:  312-436-1790

By: /s/ Stephen Chahn Lee
STEPHEN CHAHN LEE

State Bar No. 6331822
Federal ID No. 4002697
E-mail: slee@stephenleelaw.com
**COUNSEL FOR DEFENDANT**
**JORGE ZAMORA-QUEZADA**

### CERTIFICATE OF SERVICE

On December 3, 2024, this filing was served on all counsel of record via ECF.

/s/ Benigno (Trey) Martinez
Benigno (Trey) Martinez